IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Roderick Coan, ) | Civil Action No.:2:10-1712-RMG-BHH |
| ) | |
| Petitioner, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Warden Michael McCall, ) | |
| ) | |
| Respondent. ) | |

The Petitioner, a state prisoner represented by counsel, seeks habeas relief pursuant to 28 U.S.C. § 2254.[1] This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. # 38.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on June 29, 2010.[2] (Dkt. # 1 -Pet. Attach. # 2.) On February 7, 2011, the Respondent moved for summary judgment. (Dkt. # 38.) On March 28, 2011, the Petitioner filed a response opposing the Respondent's Summary Judgment Motion. (Dkt. # 45.)

---

[1] The undersigned notes that counsel filed a notice of appearance on September 21, 2010, after the Petitioner had filed this habeas petition while acting pro se. (Dkt. # 20.)

[2] This filing date reflects that the envelope containing the petition was stamped as having been received on June 29, 2010, at the Perry Correctional Institution mailroom. (Pet. Attach. # 2.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding pro se prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## **PROCEDURAL HISTORY/FACTS**[3]

On July 3, 2004, the 70 year-old the Victim woke up early to burn trash. (App. 34.) The Victim, who was wearing a housecoat, placed the trash on her porch and went back inside her house to finish getting dressed when she was overpowered by the Petitioner. (App. 35.)

The Petitioner told the Victim not to yell as he began choking and gagging her. (App. 35.) The Victim attempted to fight back and grabbed a metal rod which was next to her dressing table. (App. 36.) The Petitioner seized the rod from the Victim and beat her in the head with it and ordered her onto the bed. (App. 36.) The Petitioner then grabbed the Victim's vaginal area and attempted to rape her. (App. 36.) The Victim was eventually able to free herself and she hit the Petitioner three times in the head with the metal rod. (App. 36-37.) The Petitioner took the bar back from the Victim and threatened to kill her before striking her in the head once more. (App. 37.) The Petitioner then fled from the Victim's house and the Victim called the police. (App. 37.) The police visited the Victim at the hospital where she was able to pick the Petitioner out of a lineup. (App. 37.)

The Petitioner was charged with first degree burglary, assault and battery with intent to kill ("ABIK"), and first degree criminal sexual conduct ("CSC"). On June 16, 2005, a plea hearing was conducted before the Honorable Roger L. Couch. (App. 1-61.) The Petitioner was represented by Public Defender Jason Chehoski. (App. 2.) The Petitioner entered a plea pursuant to *North Carolina v. Alford*[4] to all of the charges. (App. 7, 12-20.) The plea court sentenced the Petitioner to life on the burglary charge, 20 years on the ABIK charge,

---

[3] The Petitioner states the Respondent's version of the facts and procedural history is "substantially correct." (Pet'r's Mem. Opp. Summ. J. Mot. at 1.) However, the undersigned notes that while the Plaintiff does not dispute the underlying facts, he states that he "testified before the lower court that he had no recollection of the incident." (Pet'r's Mem. Opp. Summ. J. Mot. at 3.)

[4] Plea counsel explained the plea was submitted under *Alford* because the Petitioner stated that he "not remember what happened that night." (App. 43.)

and 30 years on the CSC charge with each sentence to run consecutively. (App. 42, 60-61).

On July 1, 2005, the Petitioner timely filed a appeal. (App. 63.) On January 10, 2006, the Petitioner's appeal was dismissed for failing to comply with Rules 208 and 209, SCACR. (App. 64.) The remittitur was sent down on January 26, 2006. (App. 65.)

On June 9, 2006, the Petitioner filed an application for post-conviction relief ("PCR") alleging his guilty plea was involuntary because of ineffective assistance of his plea counsel. (App. 66-72.) Specifically, the Petitioner claimed counsel was ineffective for: (1) failing to adequately investigate the Petitioner's charges and interview potential witnesses; (2) failing to provide the Petitioner with adequate advice prior to his guilty plea proceeding; and (3) failing to fully advise the Petitioner of all consequences of his plea and further failed to investigate potential defenses. (App. 68.)

On July 18-19 of 2007, an evidentiary hearing was conducted before the Honorable J. Derham Cole. The Petitioner was represented by Tara Dawn Shurling. (App. 142.) On January 11, 2008, the PCR court issued an order dismissing the Petitioner's PCR claims. (App. 378-385.)

On January 25, 2008, the Petitioner filed a Rule 59(e) Motion to Alter or Amend the Judgment arguing the PCR court overlooked several aspects of his claims. (App. 387.) On January 20, 2009, the PCR court denied the Petitioner's Rule 59(e) motion. (App. 397.) On February 17, 2009, the Petitioner filed a timely notice of appeal. (App. 399-400.)

In his petition for writ of certiorari, the Petitioner raised the issue of whether the PCR court erred in finding plea counsel had not been ineffective. (Return Attach. # 7 at 6.)[5] Specifically, the Petitioner alleged that because plea counsel had failed to advise him of the

---

[5] The undersigned notes that page two of the Petitioner's Petition for Writ of Certiorari is missing from the record. Page two according to the petitioner's index set forth only the issue presented. The Petitioner restated the issue he was raising on page six of the petition prior to beginning his discussion of the issue. (Return Attach. # 7 at 6.) Rather than requiring the Respondent to re-file the petition at this point, the undersigned will rely on the statement of the issue found on page six of the petition.

3

maximum sentence for first degree burglary, his guilty plea was involuntary. Id. at. 6 and 9. On May 14, 2010, the South Carolina Supreme Court denied the Petitioner's petition for writ of certiorari. (Return Attach. # 9.)   The remittitur was sent down on June 2, 2010. (Return Attach. 10.)

The Petitioner filed this habeas action on June 29, 2020, raising the following ground for relief, quoted verbatim:

> **Ground One:** The Petitioner's right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments was violated when the Petitioner received ineffective assistance of counsel prior to and during the entry of guilty pleas and the Petitioner's right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments, was violated in that the Petitioner's pleas of guilty were not entered knowingly and voluntarily. The Petitioner specifically alleges that he was not informed of the maximum sentence that he could receive through a guilty plea for the principal offense.
>
> **Supporting Facts**: The Petitioner testified at his Post-Conviction Relief hearing that he had not been advised by counsel that the maximum sentence for the primary offense, First Degree Burglary, was life imprisonment. Furthermore, the transcript of the plea hearing indicates that the Petitioner was also not informed of the maximum sentence for this charge by the plea court. Plea counsel testified that he "believe[d]" he had advised the Petitioner that life imprisonment was possible even if the Petitioner pled guilty, but plea counsel stated that he, personally, did not believe that such a sentence was likely. Plea counsel coerced the Petitioner into pleading guilty by advising him that a life sentence was likely upon conviction by a jury. Petitioner further asserted that he would have taken his chances at a trial if he had been informed that he could also receive life imprisonment for pleading guilty to the First Degree Burglary offense.

(Dkt. # 1- Habeas Pet.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

> there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134

F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (I) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (C) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and © are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be

filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those

decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone,* 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an

external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## **DISCUSSION**

As set forth above, the Petitioner entered *Alford* pleas to first degree burglary, ABIK, and first degree attempted CSC, and he was sentenced to life on the burglary charge, 20 years on the ABIK charge, and 30 years on the CSC charge, to run consecutively. The Petitioner alleges his plea counsel was ineffective for failing to advise him that the potential maximum sentence for the first degree burglary offense was a life sentence. He contends that he was never told that his plea could result in life imprisonment, and that had he known he could be sentenced to life, he would not have pled guilty. The Petitioner raised this issue in his PCR action and the PCR Court denied him relief. The South Carolina Supreme Court denied the Petitioner a writ of certiorari on this claim. The Respondent contends the Petitioner should be denied habeas relief as the PCR court's decision was not contrary to or involved an unreasonable application of, clearly established Federal law nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The undersigned agrees.

At the PCR hearing, plea counsel testified that he recalled telling the Petitioner that if he went to trial, he would likely get a life sentence. (App. 148.) When asked what sentence he told the Petitioner he would receive if he pled, he responded: "I believe I did say that life was still, life was still a possibility, but my professional judgment and my opinion

was that since he would be avoiding the stress of a trial and in keeping the victim from having to go through that that he would get some benefit and his best chance of avoiding a life sentence was to plead." (App. 148.) He also testified that he had noted on the Petitioner's file that he told him that "I would be asking for the minimum but assuming the worst I thought he might get a sentence of 25 to 30 years." (App. 149-50.) Plea counsel acknowledged that the plea judge did go over the maximum sentence for the burglary offense and he later reiterated that he had told the Petitioner that in his judgment "he would get life if he went to trial by jury and were convicted and that if he entered pleas, the worst case scenario [he] believed he would get 25 to 30 years." (App. 153; 216.)

On cross-examination, plea counsel answered affirmatively when asked if he had told the Petitioner that he could receive a life sentence if he pled guilty. (App. 171.) He also testified that he told him that, in his opinion, if he pled guilty he thought the Petitioner would receive 25-30 years. *Id.* He then again reiterated that he had told the Petitioner that he could receive a life sentence. (App. 172.) On re-direct, counsel again testified that he had told the Petitioner that he could receive life if he pled guilty. (App. 214.) He also testified that he always tells his clients the maximum sentence they are facing and he did that in this case. (App. 215.)

The Petitioner also testified at the PCR hearing. He testified that plea counsel told him that 20-30 years was the maximum sentence that he would receive if he pled guilty. (App. 186.) The PCR court found counsel's testimony credible and Petitioner's testimony not credible. (App. 378-385.)

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance

when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In the context of a guilty plea, ineffective assistance of counsel claims may be asserted in limited circumstances.[6] In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

The PCR Court found trial counsel's testimony was credible and the Petitioner's testimony was not. That determination is entitled to deference by this Court. *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003). "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008).

The Petitioner argues that based solely upon the plea counsel's testimony that he "*believe[d]*" that he informed the Petitioner of the potential life sentence, the PCR court erred

---

[6]The undersigned notes that "*Alford* pleas are treated the same as guilty pleas." *Brown v. U.S.,* 2011 WL 825719 * 5 (D.S.C. 2011)(citing *Price v. Johnson*, 218 F. App'x 274, 275 (4th Cir. 2007). A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985).

in finding the Petitioner had been informed of the maximum sentence for first degree burglary. (Pet'r's Reply Mem. at 8.) However, the Petitioner is focusing on this one sentence from the plea counsel's testimony, to the exclusion of the remaining testimony of plea counsel during which he unequivocally states several times that he did inform the Petitioner of the maximum sentence. If the plea counsel had only testified that he believed he informed the Petitioner, the Petitioner might have a stronger case. However, to find as the petitioner argues would require the court to discount the remaining testimony of plea counsel in which he unequivocally states he did inform the Petitioner of the maximum sentence. *See Albritton v. McNeil*, 2009 WL 211948 (N.D.Fla. 2009) (holding that although counsel stated once that he "believed" he had properly advised Petitioner defendant regarding the success of an appeal, this statement did not clearly rebut the state court's factual finding that counsel otherwise testified unequivocally that he had never guaranteed success on appeal to Petitioner).

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of *Hill* and *Strickland* and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. The state court decisions did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); *Williams, supra.* Thus, the undersigned recommends that the Respondent's motion for summary judgment be granted.

## **CONCLUSION**

For the foregoing reasons, it is recommended that the Respondent's Motion for Summary Judgment (Dkt. # 38) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.


                                                    s/Bruce Howe Hendricks
                                                    United States Magistrate Judge

April 28, 2011

Charleston, South Carolina


**The Petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).